IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH - CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>TREMAINE DESHAWN ELLIS, et al.,<br><br>Defendants. | **MEMORANDUM OPINION AND ORDER**<br><br>Judge Dee Benson<br><br>Case No. 2:07-CR-223 |

Defendants Tremaine Ellis and Jennifer Warfield are charged in the sole count of the Indictment with possession of counterfeited obligations of the United States. This motion arises out of the alleged improper stop, detention, and search of Defendants by Sergeant David Bairett of the Utah Highway Patrol. Defendants argue that because the initial stop was based on racial pretext, and the subsequent detention and search exceeded the scope of the initial stop, the stop and search were illegal and all evidence obtained therefrom should be suppressed.

**Factual Background**

On March 16, 2007, Defendants Mr. Ellis and Ms. Warfield – both of whom are African American – were traveling northbound on Interstate 15 through Beaver County, Utah. Defendants were traveling in a Black Honda Accord with Mr. Ellis driving and Ms. Warfield riding in the front passenger seat. At approximately 11:00 a.m., Defendants passed by Officer Bairett of the Utah Highway Patrol, who was stationed in the median near mile marker 112. Using radar, Officer Bairett determined that Defendants were traveling at a speed of eighty-three

miles per hour, eight miles per hour over the posted speed limit of seventy-five.  Officer Bairett

testified that it was on this basis that he decided to stop Defendants' vehicle.  (Tr. pp. 8-9.)

Upon stopping Defendants' vehicle, Officer Bairett approached the vehicle from the

passenger side.  Once he arrived at the front passenger window, Officer Bairett testified that he

could smell the odor of raw marijuana emanating from the vehicle.  (Tr. p. 11.)  He asked Mr.

Ellis for his license and registration.  He also asked to whom the car belonged and was told by

Ms. Warfield that she was the owner of the vehicle.  Ms. Warfield then provided Officer Bairett

with her ownership documents, including her temporary driver's license.  (Tr. p. 10.)

Officer Bairett did not verify any documentation on the vehicle.  His check of the drivers'

licenses did not reflect any violations.  However, based upon the smell of marijuana, Officer

Bairett asked both Defendants to exit the vehicle.  Officer Bairett then took Mr. Ellis to the back

of the vehicle, away from Ms. Warfield, and after giving him what has been stipulated to by the

parties as a deficient *Miranda* warning, asked for his permission to search the vehicle.  Mr. Ellis

refused consent.  (Tr. pp. 24-25.)  Officer Bairett then approached Ms. Warfield, again gave a

deficient *Miranda* warning, and asked for her permission to search the vehicle.  Ms. Warfield

agreed.  (Tr. p. 25.)

Officer Bairett then conducted a search of the vehicle.  In the center console, Officer

Bairett found a container that had marijuana residue and the odor of marijuana.  (Tr. p. 11.)  He

also found cigars along with tobacco debris.  *Id*.  Officer Bairett testified that this is typical of

marijuana users because they will often remove the tobacco from the cigar skin and replace it

with marijuana before smoking it.  *Id*.  In the seat back, Officer Bairett discovered a marijuana

pipe with the residue of burnt marijuana.  (Tr. p. 12.)  He also located an envelope.  (Tr. pp. 12-

13.)  Although it is disputed whether this envelope was sealed at the time Officer Bairett discovered it or whether it had already been torn open, Officer Bairett searched the contents of the envelope and found what appeared to be large amounts of cash.  (Tr. p. 12.)  Upon further investigation, however, Officer Bairett testified that the money did not feel or look right to him and he immediately suspected that it was counterfeit.  (Tr. p. 13.)

Officer Bairett also searched Ms. Warfield's purse and Mr. Ellis's wallet, both of which were located in the passenger compartment of the vehicle.  In Ms. Warfield's purse, Officer Bairett discovered a pill bottle containing about 4 grams of raw marijuana.  (Tr. p. 20.)  In Mr. Ellis's wallet, Officer Bairett found two California driver's licenses, one of which contained the picture of Mr. Ellis and the other contained the picture of Ms. Warfield.  The names on these licenses, however, were different than the names on the licenses Defendants had previously given to Officer Bairett.  (Tr. pp. 13-14.)

After conducting the search of the vehicle and discovering these items, Officer Bairett arrested both Mr. Ellis and Ms. Warfield for possession of marijuana and drug paraphernalia.  (Tr. p. 13.)  He also explained that he would continue his investigation of the counterfeit money.  *Id*.

The Defendants were then transported to the Beaver County Jail where Mr. Ellis was administered field sobriety tests and a urinalysis.  (Tr. p. 14.)  From the field sobriety tests, Officer Bairett concluded that Mr. Ellis had ingested marijuana and charged him with driving with a measurable amount of a controlled substance in his body.  (Tr. pp. 14-15.)  The urinalysis, however, came back negative.  (Tr. p. 22.)

**Analysis**

In their motion to suppress, Defendants assert that the evidence seized from the vehicle must be suppressed as "fruit of the poisonous tree" because the initial stop was based on racial pretext, the detention exceeded the scope of the initial stop, and the search was based on neither consent nor probable cause. Although the government concedes that Officer Bairett's request for consent to search the vehicle was invalid, it contends that the search was proper based on probable cause.

I.    <u>The Traffic Stop</u>

A traffic stop is a seizure within the meaning of the Fourth Amendment. *United States v. Bradford*, 423 F.3d 1149, 1156 (10th Cir. 2005). However, because it is "more analogous to an investigative detention than a custodial arrest[,]" we analyze such stops under the two-part test set forth in *Terry v. Ohio*, 392 U.S. 1, 20 (1968). *Id.* (quoting *United States v. Hunnicutt*, 135 F.3d 1345, 1348 (10th Cir. 1998). Under that test, the Court must first determine "whether the officer's action was justified at its inception," and second "whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 20.

A.    <u>The Initial Stop of Defendants' Vehicle</u>

Counsel for Ms. Warfield initially asserts that Officer Bairett's stop of Defendants' vehicle was based on racial pretext. "A traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring." *United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995); *see Hunnicutt*, 135 F.3d at 1348. It is

irrelevant that the officer may have had other subjective motives for stopping the vehicle.  *See*

*Botero-Ospina*, 71 F.3d at 787; *accord Whren v. United States*, 517 U.S. 806, 810-19 (1996).

"Our sole inquiry is whether the particular officer had reasonable suspicion that the particular

motorist violated any of the multitude of applicable traffic and equipment regulations of the

jurisdiction." *Hunnicutt*, 135 F.3d at 1348 (citing *Delaware v. Prouse*, 440 U.S. 648, 661

(1979)).  The standard of *Botero-Ospina*, as applied to Officer Bairett's stop of Defendants'

vehicle, compels the conclusion that the stop was valid.  The speed limit was seventy-five miles

per hour and Officer Bairett obtained a radar reading on Defendants' vehicle of eighty-three

miles per hour.  It is undisputed that Officer Bairett observed Defendants' committing a traffic

violation.  Therefore, the initial stop of Defendants' vehicle was valid.

      B.    The Detention

Having found that the traffic stop of Defendants' vehicle was justified at its inception, the

Court must determine "whether the officer's actions during the detention were reasonably related

in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S.

at 20.  The Supreme Court has explained that "an investigative detention must be temporary,

lasting no longer than necessary to effectuate the purpose of the stop, and the scope of the

detention must be carefully tailored to its underlying justification." *Florida v. Royer*, 460 U.S.

491, 500 (1983).

Counsel for Ms. Warfield contends that once the officer had verified the drivers' licenses

of Defendants – and the other documentation had he chosen to do so – he should have simply

given Defendants a ticket or a warning for speeding and immediately terminated the encounter.

But in his initial encounter with Defendants, Officer Bairett did nothing that would exceed the

underlying justification or scope of the traffic stop.  He simply went to the front passenger

window to ask for a driver's license and vehicle registration.  It was at this time that he smelled

the odor of marijuana emanating from the vehicle.  This provided Officer Bairett with a

"particularized and objective basis for suspecting legal wrongdoing."  *United States v. Arvizu*,

534 U.S. 266, 273 (2002) (quotations omitted).  Having made this observation, the purpose of

the stop then escalated, and a longer detention was justified.

II.     The Search of the Vehicle

     A.     Consent to Search

A search conducted pursuant to consent is an exception to the warrant requirement of the

Fourth Amendment.  *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973).  Valid consent is

that which is "freely and voluntarily given."  *Id*. at 222 (quoting *Bumper v. North Carolina*, 391

U.S. 543, 548 (1968)).  In the present case, Officer Bairett improperly advised Defendants of

their constitutional rights before requesting consent to search the vehicle.  (Tr. p. 5.)  Although

Mr. Ellis refused consent, Ms. Warfield agreed.  Counsel for Mr. Ellis contends that because the

consent to search was obtained after the defective *Miranda* warnings were given, Ms. Warfield's

consent was not 'free and voluntary.'

In the alternative, counsel for Mr. Ellis argues that even were the Court to find that Ms.

Warfield's consent to search was "freely and voluntarily given," Officer Bairett's circumvention

of Mr. Ellis's refusal is a violation of the Fourth Amendment.  Counsel makes this argument by

relying on the Supreme Court decision of *Georgia v. Randolph*, 547 U.S. 103 (2006).  In

*Randolph*, the Court found that in the context of a warrantless consent-based search of a home,

"a physically present co-occupant's stated refusal to permit entry prevails, rendering the

6

warrantless search unreasonable and invalid as to him." *Id*. at 106.  Counsel asks this Court to

apply *Randolph* to the present context of a vehicle search to find that Officer Bairett's failure to

distinguish between those items that belonged to Mr. Ellis and those that belonged to Ms.

Warfield during his search of the vehicle was in violation of the Fourth Amendment.

It is not necessary, however, for the Court to address this issue.  As stated previously, the

government concedes that the *Miranda* warnings given by Officer Bairett were insufficient.  (Tr.

p. 5.)  To be sure, the government has stipulated that all statements made by Defendants

following these warnings are inadmissible.  *Id*.  The government has never contended that

Officer's Bairett search of the vehicle was a valid consent-based search.  *Id*.  Therefore, in

accordance with the understanding of the parties, the Court finds that Ms. Warfield's consent

was not "freely and voluntarily given" and her consent was invalid.

   B.   Search Based on Probable Cause

An officer may search a vehicle without a warrant and without consent when he has

probable cause to believe that the vehicle contains contraband.  *Florida v. White*, 526 U.S. 559,

563-64 (1999); *United States v. Mercado*, 307 F.3d 1226, 1228 (10th Cir. 2002).  Probable cause

requires a "fair probability that contraband or evidence of a crime will be found." *Illinois v.

Gates*, 462 U.S. 213, 238 (1983).  In the Tenth Circuit, the smell of marijuana alone can satisfy

the probable cause requirement to search a vehicle.  *See, e.g.*, *United States v. Parker*, 72 F.3d

1444, 1450 (10th Cir. 1995) ("If an officer smells marijuana in the passenger compartment of a

vehicle, he has probable cause to search the passenger compartment."); *United States v. Morin*,

949 F.2d 297, 300 (10th Cir. 1991) ("This court has long recognized that marijuana has a distinct

smell and that the odor of marijuana alone can satisfy the probable cause requirement to search a

vehicle or baggage."); *United States v. Bowman*, 487 F.2d 1229, 1230 (10th Cir. 1973) ("A border patrol agent who has learned how to identify marijuana by sight or by its odor has probable cause to search and seize . . . .").

Consequently, the issue before the Court is one of credibility.  Officer Bairett testified that "he smelled the odor of raw marijuana coming from the vehicle." (Tr. p. 11.)  When questioned by defense counsel whether he smelled raw marijuana as opposed to burnt marijuana, Officer Bairett confirmed that there is a distinct difference between the two, and that he smelled raw marijuana. (Tr. pp. 19, 50.)  The only measurable amount of raw marijuana actually found in the vehicle, however, was four grams located in a small pill bottle inside of Ms. Warfield's purse. (Tr. pp. 12, 20.)  Defendants contend that based on this small amount, it would have been impossible for any human to detect it.  On this basis, Defendants argue, Officer Bairett's testimony cannot be credible.

But the Defendants' contention does not account for other items in the vehicle that also would have emanated the odor of raw marijuana.  In addition to finding the four grams of raw marijuana in Ms. Warfield's purse, Officer Bairett also found – located in the center console – "a container that had marijuana residue and the odor of marijuana." (Tr. p. 11.)  Also located in the center console, were cigars and tobacco debris, evidencing that at one time Defendants may have used the vehicle to pack raw marijuana into empty cigar skins, which would have left a lingering smell.  *Id.*  Officer Bairett also discovered a pipe containing marijuana residue. (Tr. pp. 11-12.)  Although the marijuana residue in the pipe was burnt, it provides further evidence that at one time Defendants' vehicle contained raw marijuana, again leaving its lingering smell.  The fact that the marijuana odor may not have been particularly strong, is of no consequence.  "[T]he

8

strength of the smell [is] not an integral factor in our probable cause determination[].” *United States v. McIntosh*, No. 94-4058, 1995 WL 12023, at *2 (10th Cir. Jan. 12, 1995).

Although the evidence or contraband seized during a search cannot justify, ex post facto, the legality of the search, *see State v. Sierra*, 754 P.2d 972, 977 (Utah App. 1988), it does inform the question of credibility.  The items found incident to the search support Officer Bairett’s testimony that he smelled the odor of raw marijuana emanating from the vehicle.  Based on Officer Bairett’s testimony and the corroborating evidence, the Court finds that Officer Bairett had probable cause to search Defendants’ vehicle.

C.     Scope of the Search

Counsel for Mr. Ellis finally argues that even if the search was valid based on probable cause, Officer Bairett exceeded the scope of the search when he looked inside the envelope and discovered the counterfeit obligations.  “The scope of a warrantless search of an automobile ‘is defined by the object of the search and the place in which there is probable cause to believe that it may be found.’”  *United States v. Nielsen*, 9 F.3d 1487, 1491 (10th Cir. 1998) (quoting *United States v. Ross*, 456 U.S. 798, 824 (1982)).  Counsel alleges that when Officer Bairett discovered the envelope in the vehicle, regardless of whether it was open or closed, he had no reason to look inside it because he did not have probable cause to believe it could contain marijuana.

Counsel’s argument is without merit.  Defendants have spent much of their briefs detailing the small amount of measurable marijuana that was actually found in the vehicle.  Earlier in his brief, counsel quoted Officer Bairett’s testimony to describe the marijuana as “a very small amount.”  Ellis’s Memo in Support, p. 3 (Dkt. No. 32) (quoting (Tr. p. 20)).  So small that it only half-filled the “small pill bottle” in which it was contained.  *Id*.  At the evidentiary

9

hearing, counsel for Ms. Warfield sought to describe the marijuana found as the size of "a few peanuts or almonds."  (Tr. p. 20.)  To now argue that Officer Bairett did not have probable cause to believe that an envelope could contain marijuana is disingenuous.  *United States v. Ross*, 456 U.S. 798, 825 (1982) ("If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.").

**Conclusion**

For the foregoing reasons, the Court finds that Officer Bairett's stop, detention, and subsequent search of Defendants and their vehicle was valid under the Fourth Amendment. Accordingly, Defendant's motion to suppress is DENIED.

**IT IS SO ORDERED.**

DATED this 3rd day of July, 2008.

_____
Dee Benson
United States District Judge